SOUTHWESTERN ENERGY
PRODUCTION COMPANY

v.

FOREST RESOURCES, LLC, Kocjancic
Family Limited Partnership, Harold
H. Wolfinger, Jr., Ultra Resources,
Inc., Jackson Corners Sportsmen, Inc.,
Northern Forests II, Inc., Wevco Pro-
duction, Inc., and Anadarko Petro-
leum Corporation, LP a/k/a Anadarko
Petroleum Corporation.

International Development Corporation
and Trustees of the Thomas E. Proc-
tor Heirs Trust Dated October 28,
1980.

Trustees of the Thomas E.
Proctor Heirs Trust,

v.

Forest Resources, LLC, Kocjancic Fami-
ly Limited Partnership, Harold H.
Wolfinger, Jr., Ultra Resources, Inc.,
Jackson Corners Sportsmen, Inc.,
Northern Forests II, Inc., and Interna-
tional Development Corporation.

Trustees of the Thomas E.
Proctor Heirs Trust,

v.

Southwestern Energy Production Com-
pany and Lancaster Exploration &
Development Co., LLC

v.

Trustees of the Margaret
O.F. Proctor Trust.

Appeal of Trustees of the Margaret
O.F. Proctor Trust.

Southwestern Energy Production
Company

v.

Forest Resources, LLC, Kocjancic Fami-
ly Limited Partnership, Harold H.
Wolfinger, Jr., Ultra Resources, Inc.,
Jackson Corners Sportsmen, Inc.,

Northern Forests II, Inc., Wevco Pro-
duction, Inc., and Anadarko Petro-
leum Corporation, LP a/k/a Anadarko
Petroleum Corporation.

International Development Corporation
and Trustees of the Thomas E. Proc-
tor Heirs Trust Dated October 28,
1980.

Trustees of the Thomas E.
Proctor Heirs Trust,

v.

Forest Resources, LLC, Kocjancic Fami-
ly Limited Partnership, Harold H.
Wolfinger, Jr., Ultra Resources, Inc.,
Jackson Corners Sportsmen, Inc.,
Northern Forests II, Inc., and Interna-
tional Development Corporation.

Trustees of the Thomas E.
Proctor Heirs Trust,

v.

Southwestern Energy Production Com-
pany and Lancaster Exploration &
Development Co., LLC

v.

Trustees of the Margaret
O.F. Proctor Trust.

Appeal of Trustees of the Thomas
E. Proctor Heirs Trust.

Superior Court of Pennsylvania.

Argued Aug. 20, 2013.

Filed Nov. 27, 2013.

Reargument Denied Feb. 4, 2014.

Paul K. Stockman, Pittsburgh, for Trustees of the Margaret O.F. Proctor Trust, appellant.

Justin G. Weber, Harrisburg, for Trustees of the Thomas E. Proctor Heirs Trust, appellant.

Ronald L. Hicks, Jr., Pittsburgh, for Lancaster Exploration, appellee.

Jeffrey J. Malak, Wilkes Barre, for Southwestern Energy, appellee.

BEFORE: GANTMAN, J., ALLEN, J., and MUNDY, J.

OPINION BY MUNDY, J.:

Appellants, the Trustees of the Thomas E. Proctor Heirs Trust (PHT) and the Margaret O.F. Proctor Trust (MPT), appeal from the orders entered on December 19, 2012, granting Appellee Lancaster Exploration & Development Co., LLC's (Lancaster) motion for judgment on the pleadings and sustaining Southwestern Energy Production Company's (Southwestern) and Lancaster's respective preliminary objections.[1] These orders dismissed Appellants' respective counterclaims for declaratory judgment, seeking a decree declaring the invalidity of certain oil and gas lease agreements for non-compliance with the Guaranty Minimum Royalty Act (GMRA), 58 P.S. § 33.[2] After careful review, we reverse and remand for further proceedings.

We summarize the factual and procedural history of this case as follows. Appellants maintain a claim to oil, gas and mineral rights underlying certain acreage found in warrant 1621 in Lycoming County, Pennsylvania, stemming from the reservation of such rights in an 1894 deed from Thomas and Emma Proctor to the Elk Tanning Company.[3] Other parties in this action (Adverse Defendants) claim competing rights stemming from a decree entered in a 1988 quiet title action by Northern Forests.[4] On June 17, 2002,

---

1. We *sua sponte* consolidate the appeals at No. 151 MDA 2012 and No. 152 MDA 2012 as they arise from the same underlying facts, involve the same parties, and present identical issues on appeal.

2. Effective September 9, 2013, 58 P.S. § 33 was repealed and substantially re-enacted at 58 P.S. § 33.3.

3. MPT and PHT were established in 1976 and 1980 respectively to, *inter alia,* manage the subject interest and other property interests

for successors in interest to Thomas Proctor. MPT controls 6.25% of those interests.

4. Adverse Defendants are Forest Resources, LLC, Kocjancic Family Limited Partnership, Harold H. Wolfinger, Jr., Ultra Resources, Inc., Jackson Corners Sportsmen, Inc., Northern Forests II, Inc., Wevco Production, Inc., and Anadarko Petroleum Corporation, LP A/K/A Anadarko Petroleum Corporation. Adverse Defendants' interests are not implicated in the instant appeal and all declined to file an appellate brief.

PHT executed an agreement leasing its oil and gas rights to Lancaster, evidenced by a recorded lease and referenced "Letter Agreement." On February 17, 2005, PHT executed a second "Letter Agreement," amending the 2002 agreement and providing for the execution of an extension of the lease, which was executed on June 22, 2005.[5] On November 24, 2009, MPT and PHT executed a "confirmatory deed," in which MPT confirmed the assignment of its oil and gas rights at issue in this case, *inter alia*, to PHT. The deed did not state the date of the assignment. MPT disclaims any assignment and the validity of the confirmatory deed. Those issues remain unresolved. Southwestern subsequently succeeded to Lancaster's interests in the subject property.

Southwestern initiated the instant case on December 9, 2011, with the filing of a complaint. In count two of its complaint, Southwestern seeks to quiet title to the oil, gas and mineral rights underlying real estate identified in warrants 1621 and 1622 in Lycoming County, Pennsylvania, against Adverse Defendants. In count one of its complaint, Southwestern seeks a declaratory judgment defining said subsurface rights among itself, Adverse Defendants, PHT, and Appellee International Development Corporation (IDC).

On January 27, 2012, PHT filed an answer and new matter to Southwestern's complaint together with a counterclaim and cross-claim. In its answer and new matter, PHT averred Southwestern's claimed interest in PHT's reserved oil, gas and mineral rights was baseless, being derived as the assignee of invalid leases.

PHT cross-claimed against Adverse Defendants to quiet title and for declaratory judgment based on the alleged invalidity of the 1988 quiet title decree. In its counterclaim against Southwestern, PHT seeks a declaratory judgment that the PHT/Lancaster lease, as amended, is invalid under the GMRA.

On February 15, 2012, Southwestern filed preliminary objections, in the nature of a demurrer and for more specific pleadings, to PHT's counterclaim. That same day, PHT filed a joinder complaint against additional defendant Lancaster. On April 9, 2012, PHT filed its second amended counterclaims, which, in addition to its declaratory judgment claim, included a second count for a constructive trust for all proceeds generated under the allegedly invalid leases. On April 26, 2012, Southwestern filed preliminary objections, demurring to both counts of PHT's second amended counterclaims. On May 2, 2012, Lancaster filed a joinder complaint, adding MPT as an additional defendant to settle the status of MPT's 6.25% interest in the oil, gas and mineral rights in PHT's declaratory judgment counterclaim. On May 14, 2012, Lancaster filed an answer with new matter to PHT's joinder complaint together with counterclaims alleging breach of contract, tortious interference with contractual relations, and slander of title.

On May 24, 2012, the trial court sustained Southwestern's preliminary objections and dismissed PHT's second amended counterclaim. PHT filed a motion, requesting the trial court to certify

5. A third Trust, the Thomas E. Proctor, Jr. Trust (TPT), representing a proportional share of the Thomas Proctor reserved interests, executed virtually identical agreements on June 18, 2002 (Letter Agreement), July 23, 2002 (Lease), June 25, 2005 (Extension), and August 2, 2005 (amended Letter Agreement). Subsequently, TPT terminated and all the beneficiaries' fractional interests in the subject property were conveyed to PHT. All our discussion concerning the validity of the PHT/Lancaster lease applies equally to TPT/Lancaster agreements, which are also challenged in this appeal.

its May 24, 2012 order for immediate appeal. The trial court did not rule on the motion until July 2, 2012, when it determined that due to the lapse of more than 30 days it was without authority to grant the motion. The trial court expressed its view, in a footnote, that it would have denied the motion in any event since "immediate appeal would not facilitate resolution of the entire case." Trial Court Opinion and Order, 7/3/12, at 1, n.1.

Meanwhile, MPT filed its Answer and New Matter together with a cross-claim and counterclaim on June 21, 2012. Both Southwestern and Lancaster filed preliminary objections to the counterclaims. MPT filed an amended Answer and New Matter together with cross-claims and counterclaims on July 25, 2012. In its cross-claim against the Adverse Defendants, MPT sought declaratory judgment and quiet title relief averring those defendants' claims to its 6.25% interest in the subsurface rights of the aforesaid acres in Warrant 1621 are invalid. In its cross-claim against PHT, MPT seeks rescission of the confirmatory deed, alleging it was executed in error and that MPT never conveyed its interests in the subject property to PHT. Accordingly, MPT further alleged its interests are not subject to the lease between PHT and Lancaster or the assignment of that lease to Southwestern. In its counterclaim against Southwestern and Lancaster, MPT seeks declaratory judgment on the basis that the PHT/Lancaster Lease, as amended, is invalid as it violates the provisions of the GMRA. MPT also seeks a constructive trust against Southwestern and Lancaster for any profit derived from drilling activities in derogation of MPT's rights. Again, both Southwestern and Lancaster filed preliminary objections in the nature of a demurrer to

MPT's counterclaims on August 9, 2012, and August 14, 2012, respectively.

On October 31, 2012, Lancaster filed a motion for judgment on the pleadings seeking dismissal of PHT's joinder complaint and "for a declaration that PHT must execute an assignment to Lancaster of 50% of its royalty interest under the PHT/Lancaster Lease and the TPT/Lancaster Lease pursuant to the 2005 PHT/Lancaster Letter Agreement and the 2005 TPT/Lancaster Letter Agreement." Lancaster's Motion for Judgment on the Pleadings, 10/31/12, at 14.

On December 19, 2012, the trial court entered an order, with an accompanying Opinion, granting Lancaster's motion for judgment on the pleadings in part and finding in favor of Lancaster and against PHT on its declaratory judgment claim.[6] The trial court also entered an order sustaining both Lancaster's and Southwestern's preliminary objections to MPT's amended counterclaim. PHT and MPT each filed a notice of appeal on January 17, 2013. The trial court did not order either Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed a Rule 1925(a) opinion referencing its earlier opinions accompanying the orders at issue for an explanation of the court's reasons for its rulings.

On appeal, Appellants raise virtually identical single issues for our review.

Does an oil and gas lease that results in an effective royalty of one sixteenth by requiring the lessor to assign one half of the one-eighth royalty back to the original lessee violate Pennsylvania's Guaranteed Minimum Royalty Act, Act of

---

6. The trial court did not grant judgment on the pleadings in connection with Lancaster's counterclaim against PHT for breach of the lease agreements.

July 20, 1979, P.L. 183, No. 60, § 1, 58 P.S. § 33?

PHT's Brief at 5.

An oil and gas lease transaction provides the lessor with only a one-sixteenth royalty, because half of the nominal royalty was assigned back to the original lessee as an integral part of the lease transaction. Does this violate Pennsylvania's Guaranteed Minimum Royalty Act, Act of July 20, 1979, P.L. 183, No. 60, § 1, 58 P.S. § 33?

MPT's Brief at 4.

As a preliminary matter, we address Southwestern's and Lancaster's assertions that PHT's appeal is late-filed and should be quashed. Southwestern and Lancaster contend the trial court's order of May 24, 2012, was a final appealable order and PHT's notice of appeal, filed beyond the 30 days allowed for an appeal, is untimely. Lancaster's Brief at 16; Southwestern's Brief at 10.[7] Pennsylvania Rule of Appellate Procedure 341 provides that an appeal may be taken from any final order entered by a trial court. *See* Pa.R.A.P. 341(a). The Rule defines a final order as one that "(1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute.... " Pa.R.A.P. 341(b)(1), (2). The Declaratory Judgment Act provides, in part, as follows.

Courts of record ... shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.... The declaration may be either affirmative or negative in form and effect, and such declaration

shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532 (emphasis added); *see Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 585–587 (1996) (*en banc*) (holding trial court order declaring parties' rights under duty-to-defend provisions of insurance contract was final order, per 42 Pa.C.S.A. § 7532, notwithstanding underlying insurance claim remained pending), *appeal denied*, 548 Pa. 649, 695 A.2d 787 (1997).[8]

■ The trial court's May 24, 2012 order sustaining Southwestern's preliminary objections had the effect of declaring only the respective rights between Southwestern and PHT relative to PHT's declaratory judgment counterclaim. *See Nationwide Mut. Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813, 817–818 (2000) (holding an order sustaining preliminary objections in the nature of a demurrer, raised against a claim for declaratory judgment, "effectively declared the legal rights of the parties" where the basis for the order was that there existed no legal basis upon which the plaintiff could recover). However, the trial court's May 24, 2012 order did not dismiss any of the parties, which were still attached to PHT's counterclaim issue through PHT's and Lancaster's joinder complaints and MPT's counterclaim, or dispose of the those remaining claims. In *Pennsylvania Bankers Ass'n v. Pennsylvania Dept. of Banking*, 597 Pa. 1, 948 A.2d 790, 799 (2008) and *U.S. Org. for Bankruptcy Alternatives, Inc. v. Dept. of Banking*, 611 Pa. 370, 26 A.3d 474 (2011),

**7.** Unless otherwise indicated, citations are from the briefs filed by Lancaster and Southwestern in the PHT appeal at 152 MDA 2013.

**8.** The *Redevelopment* Court also credited the fact that the appellant in that case alternatively tried to perfect his appeal by petitioning the trial court to certify it for immediate appeal

under 42 Pa.C.S.A. § 702(b) (providing for interlocutory appeal by permission) and Pa. R.A.P. 1311(b), although the trial court denied the request. *Id.* at 587. As noted, Appellant made such a request in the instant case.

our Supreme Court made clear that its holding in *Wickett* did not render an order, that did not fully release a party or completely resolve the dispute, a final order. Rather such an order would be deemed a partial declaration of the parties' rights and would not be immediately appealable. *Pennsylvania Bankers, supra.*

In light of the foregoing, we conclude the trial court's May 24, 2012 order, sustaining only Southwestern's preliminary objections to PHT's counterclaim for declaratory judgment, was not a final appealable order. Rather, it was the trial court's orders of December 19, 2012, granting Lancaster's motion for judgment on the pleadings and sustaining Lancaster's and Southwestern's preliminary objections to MPT's counterclaim, that released all the parties and resolved the declaratory judgment action. *Id.* As PHT's notice of appeal was filed within 30 days of the trial court's December 19, 2012 final orders, we decline to quash PHT's January 17, 2013 notice of appeal as untimely. *See* Pa. R.A.P. 903.

As an additional preliminary matter, we address Lancaster's arguments that MPT's appeal should be quashed. Lancaster's MPT Appeal Brief at 14–18. In its preliminary objections to MPT's counterclaim for declaratory judgment, Lancaster included as one of the grounds for its demurrer that MPT lacked standing to contest the validity of the lease between itself and PHT. Lancaster's Preliminary Objections to the Counterclaims of the Trustees of [MPT], 8/14/12, at 10. Lancaster averred MPT conceded it was not a party to any of the agreements underlying the dispute over the validity of the leases/letter-agreements or assignments on the basis of the GMRA and was not an intended beneficiary of any of the agreements. *Id.* at 12 ¶ 53. "Given that it is not a party to any of the operative agree-

ments at issue, MPT was not entitled to bring an action concerning the validity of the PHT/Lancaster Lease or seek relief in the nature of having it declared unlawful under the [Declaratory Judgment Act]." Lancaster's MPT Appeal Brief at 15. The trial court did not address this ground for granting Lancaster's preliminary objections, instead sustaining Lancaster's demurrer on the merits of MPT's claim.

■ Even if correct, Lancaster's claim, that MPT lacks standing to bring the declaratory judgment counterclaim, is not jurisdictional.

> The concept of jurisdiction "has its roots in territorial principles and the idea of sovereignty" and "relates to a court's power to hear and decide a case." *Commonwealth v. Eichinger*, 591 Pa. 1, 16, 915 A.2d 1122, 1132 (2007).... The core concept of standing, on the other hand, "is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby" and, therefore, may not "obtain a judicial resolution of his [or her] challenge." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280 (1975). Standing is a non-jurisdictional and waivable issue. *In re Condemnation by Urban Redev. Auth. of Pittsburgh*, 590 Pa. 431, 913 A.2d 178 (2006).

*Housing Authority of City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 213–214 (Pa. Cmwlth.2012) (some citations and footnote omitted). Accordingly, quashing of the appeal on the basis of standing would not be an appropriate response by this Court. Rather, Lancaster's assertion that MPT lacks standing, which it included as an alternate claim in its preliminary objections, could afford us an alternative basis for affirming the trial court. "[W]e are not bound by the rationale of the trial court and may affirm on any basis." *Rich-*

*mond v. McHale,* 35 A.3d 779, 786 n. 2 (Pa.Super.2012).

■ In the instant case, however, Southwestern has not raised the issue of MPT's standing, and, as to it, the issue is waived. This fact coupled with our disposition of the merits of the issue on appeal, leads us to decline to opine on the merits of Lancaster's standing issue at this time.

We proceed, therefore, to address the merits of Appellants' single issue on appeal. Appellants contend the trial court erred in sustaining Lancaster and Southwestern's preliminary objections and Lancaster's motion for judgment on the pleadings, and erred in ruling that the PHT/Lancaster lease agreement as amended did not violate the GMRA.

■ Our standard of review when considering the grant of a motion for judgment on the pleadings is as follows.

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Coleman v. Duane Morris, LLP,* 58 A.3d 833, 836 (Pa.Super.2012) (citations omitted). Our review of an order sustaining preliminary objections in the nature of a demurrer involves similar principles.

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale,* 35 A.3d 779, 783 (Pa.Super.2012), *quoting Feingold v. Hendrzak,* 15 A.3d 937, 941 (Pa.Super.2011).

■ Appellants maintain the trial court erred as a matter of law in determining the Lancaster/PHT lease agreement as amended was valid and did not violate the minimum royalty provision of the GMRA.

PHT's Brief at 13; MPT's Brief at 14.[9] "Nowhere does the [GMRA] permit the minimum royalty to be reduced by an assignment back to the lessee. As a result, the Lease, as amended, is invalid because it produces a royalty that is one half of the statutory minimum." PHT's Brief at 15.

The trial court concluded that the "assignment back" provision in the 2005 Letter Agreement did not violate the GMRA. Trial Court Opinion, 5/24/12, at 5. "[T]he royalty to be paid remains 1/8; the assignment back to Lancaster simply divides that royalty payment. Thus, no violation of the [GMRA] has been pled and the request for declaratory judgment in that regard will be dismissed." *Id.* (footnote omitted).

> It cannot be disputed that the lease calls for the producer of the oil and gas to pay to the lessor a 1/8 royalty, as required by the Act. The letter agreement also states that the assignment back of 50% of that royalty is in exchange for Lancaster's marketing services, as Lancaster would not be producing any oil and gas because it is not a production company. Without deciding whether the Act would be violated by such an assignment between a producer and a lessor, the court again holds that under these circumstances, the lease does not violate the Act and is not invalid on that basis.

Trial Court Opinion, Re Motion for Judgment on the Pleadings, 12/18/12, at 3.

Implicit in the trial court's determination is a conclusion that the letter agreements are contracts distinct from and collateral to the PHT/Lancaster Lease. Both Lancaster and Southwestern urge us to accept this interpretation of the instruments. "As is evident from the parties'

contractual arrangements, the 2005 PHT/Lancaster Letter Agreement furthered a distinct business relationship between the parties, which was originally established in the 2002 PHT/Lancaster Letter Agreement **separate and apart** from the PHT/Lancaster Lease, and was supported by other consideration." Lancaster's Brief at 29 (emphasis added). "[T]he words of the Letter Agreements and Extensions did not suggest … that the Royalty Act's provisions were … being subverted by allowing the PHT Lease royalty benefits to be subdivided in **separate transactions** which the PHT for their own good reasons thought beneficial to their interests at the time." Southwestern's Brief at 16 (emphasis added).

Appellants argue to the contrary. "The Letter Agreements were not a part of a 'separate commercial agreement' or a 'distinct business relationship,' but rather provide basic lease terms and must be read together [with the recorded lease] to capture the entire lease agreement between the parties." PHT's Reply Brief at 5. "Because the Original Lease and Letter Agreements are expressly interrelated and refer to one another, the Original Lease and Letter Agreements must be construed as one agreement. To hold otherwise would be to ignore the facts of this case and the well-established law of this Commonwealth." *Id.* We agree.

[A] lease is in the nature of a contract and is controlled by principles of contract law. It must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, deter-

---

9. The arguments of PHT and MPT are in concert, and our references to the brief of either shall speak to the arguments of both.

mines the construction to be given the agreement.

*T.W. Phillips Gas and Oil Co. v. Jedlicka,* 615 Pa. 199, 42 A.3d 261, 267 (2012) (internal quotation marks and citations omitted).

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Humberston v. Chevron U.S.A., Inc.,* 75 A.3d 504, 509–10 (Pa.Super.2013) (internal quotation marks and citations omitted).

It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together. It is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects. Terms in one section of the contract, therefore, should never be interpreted in a manner which nullifies other terms in the same agreement. Furthermore, the specific controls the general when interpreting a contract.

*Trombetta v. Raymond James Financial Services, Inc.,* 907 A.2d 550, 560 (Pa.Super.2006) (citations omitted). "It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole." *Shehadi v. Northeastern Nat. Bank of Pennsylvania,* 474 Pa. 232, 378 A.2d 304, 306 (1977). "Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Huegel v. Mifflin Const. Co., Inc.,* 796 A.2d 350, 354–355 (Pa.Super.2002), *quoting Neville v. Scott,* 182 Pa.Super. 448, 127 A.2d 755, 757 (1957).

With these principles in mind, we examine the documents in the instant case. By their own terms, the 2002 PHT/Lancaster Lease and the 2002 Letter Agreement reference and incorporate each other with the clear intent they should be interpreted as a single agreement. The Lease specifically provides that the "Lessor hereby provides notice that leased lands herein **are subject to** a certain contractual option dated June 17, 2002, between Lessor and Lessee." PHT's Answer, New Matter, Cross-claim and Counterclaim, 1/27/12, Exhibit A–1 at 5 ¶ 17 (emphasis added). The lease further provides that, "express provisions and implied covenants of this lease shall be subject to all applicable laws, governmental orders, rules and regulations." *Id.* at 4 ¶ 13.

The 2002 Letter Agreement, referencing PHT and Lancaster respectively as "Lessor" and "Lessee," contains the following language further evidencing the parties' intent that the documents encompass one agreement. "This letter will reduce to writing our **complete agreement** regarding the . . . mineral acres [including the Warrant 1621 acres] owned or claimed by the Thomas E. Proctor Estate in the Commonwealth of Pennsylvania." *Id.,* Exhibit A–2 at 1. "Lessor shall execute the Oil and Gas Lease [ ] attached hereto **and made a**

**part hereof** by this reference." *Id.,* ¶ 1 (emphasis added).

Consideration. The consideration to Lessor **for the Lancaster Lease and for the Option to Lease** described below is the sum of Seventy-five Dollars to be paid at the time of receipt of the Lancaster Lease, payable to the trust account of Broude & Hochberg, L.L.P., and in addition:

. . .

(b) Royalty Consideration. The Lease provides for the industry standard twelve and one-half (12.5%) percent royalty. A "royalty interest" is the economic interest reserved by the mineral estate owner and is typically free of the cost of exploration and development of oil and gas wells, and,

. . .

*Id.,* ¶ 2b (emphasis added).

Similarly, the 2005 Letter Agreement, still referencing the parties as "Lessor" and "Lessee", identifies itself as an amendment of the 2002 Agreement, not an independent collateral agreement. "This letter agreement amends and restates the agreement between [PHT] and Lancaster [ ] dated June 17, 2002." *Id.,* Exhibit B at 1.

1. Lancaster Oil and Gas Lease, Lessor executed a certain Oil and Gas Lease [ ] dated June 17, 2002 attached hereto and made a part hereof by this reference as Exhibit B and recorded in Lycoming County, Pennsylvania in Liber 4262, Pages 241–246. Lessor agrees to execute a certain Extension of Oil and Gas Lease attached hereto as Exhibit C to extend the primary term of the oil and gas lease from five years to ten years.

*Id.,* ¶ 1.

3. Consideration. The consideration to Lessor **for executing the Lancaster Lease and for the Option to Lease** described below is the sum of Seventy-five Dollars that has been paid previously and an additional Twenty-five Dollars that shall be paid concurrently herewith for the execution of this Agreement (payable to the trust account of Broude & Hochberg, L.L.P.), and in addition:

. . .

(b) Royalty Consideration—Oil and Gas. The Proctor Pennsylvania Property's Lease, as amended by the First Amendment, provides for the industry standard twelve and one-half (12.5%) percent royalty. A "royalty interest" is the economic interest reserved by the mineral estate owner and is typically free of the cost of exploration and development of oil and gas wells. Lessor shall retain fifty percent (50%) of such royalty of Lessor's interest in the Proctor Pennsylvania Property and Lancaster shall be assigned the remaining fifty percent (50%), and,

. . .

*Id.,* ¶ 3b (emphasis added).

Based on the unequivocal language of the 2002 PHT/Lancaster Lease and the 2002 and 2005 Letter Agreements, we conclude the trial court erred as a matter of law in failing to interpret them together as a single lease agreement. Appellees' contention that the letter agreements are wholly collateral and do not affect the basic terms of the lease does not bear scrutiny. The relevant documents expressly reference and incorporate each other. The 2005 Letter Agreement specifically states that royalty consideration is for "executing the Lancaster Lease and the Option to Lease." *Id.* Thus, the trial court's assertion that "[t]he letter agreement also states that the assignment back of 50% of that royalty is in exchange for Lancaster's marketing services, as Lancaster would not be producing any oil and gas because it is not a production company," is not

supported by the record. Trial Court Opinion, Re Motion for Judgment on the Pleadings, 12/18/12, at 3. Neither does the record support Appellees' contention that the Letter Agreements were intended as distinct agreements accommodating Lancaster's purported role, not as a production company, but as provider of independent services procuring potential assignees for the lease. Lancaster's Brief at 7, 26–27; Southwestern's Brief at 17.

For example, paragraph 15 of the lease imposes a duty on the Lessee "to use due diligence as **a reasonable prudent operator** in developing this leasehold, should oil, gas or any similar substance as covered by this lease be discovered in Paying quantities." [10] PHT's Answer, New Matter, Cross-claim and Counterclaim, 1/27/12, Exhibit A–1 at 5, ¶ 15 (emphasis added). The Letter Agreements do not diminish this requirement of due diligence, directing that "Lessee shall use its best efforts and devote such time as is necessary and, appropriate to faithfully, competently and diligently perform to the best of its ability all the duties required of it to promote and to manage the Proctor Property." *Id.*, Exhibit B at 4, ¶ 7. The Letter Agreements impose reporting requirements on Lancaster for any "leasing, permitting, drilling, timber and production activity," but noth-

ing in the Letter Agreements forecloses Lancaster from functioning as a reasonable prudent operator. *Id.*, Exhibit A–1 at 2, ¶ 4, Exhibit B at 3, ¶ 4

We conclude, therefore, based on a plain reading of the documents themselves, that the recorded 2002 Lease, the 2002 Letter Agreement as amended by the 2005 Letter Agreement, and 2005 Lease Extension must be construed together to interpret the terms of the lease agreement between PHT and Lancaster. It remains for us to determine if the "assignment back" provision of PHT's royalty interest violates the GMRA. We conclude it does.

Appellees argue that as long as a lease provides the mandated minimum royalty, a lessor is free to assign that royalty in any manner it chooses.

> The Letter Agreements and the Extensions do not change the one-eighth royalty rate in the PHT Lease. In essence, the MPT and the PHT's contention is that any sharing or assignment of a portion of its royalty with any party which brings its net retained royalty to less than one-eighth violates the Royalty Act.

Southwestern's Brief at 13.[11] Appellants counter that "[t]he fact that the Lease *nominally* provides a one-eighth royalty

---

10. The Lease specifically lets an interest in the property to lessee "for the purpose of prospecting, exploring ..., drilling, ... **operating** for and **producing** oil or gas...." PHT's Answer, New Matter, Cross-claim and Counterclaim, 1/27/12, Exhibit A–1 at 1, ¶ 1. Additionally, the Lease defines "drilling operations" as including operations "for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish **production** of oil or gas...." *Id.* at 2, ¶ 2 (emphasis added).

11. Appellees' suggestion that the royalty assignment-back provision is "similar to a royalty payment being reduced by a reduction of

certain production cost," permitted in *Kilmer v. Elexco Land Services, Inc.*, 605 Pa. 413, 990 A.2d 1147 (2010) is inapposite. *Kilmer* involved definition of "royalty" and the method to calculate the value of the gas recovered that would be subject to payment of royalties. The *Kilmer* Court concluded that pre-recovery costs were excluded from that calculation but post recovery costs, such as refinement and transportation could be included. The assignment back provision at issue here does not implicate the definition of "royalty" or the value of the gas removed, and does not involve post recovery expenses. It merely has the effect of reducing the net royalty due the lessor from the lessee or its successors.

makes no difference. The transaction, construed as a whole ... clearly leaves PHT with fifty percent less." MPT's Brief at 15 (emphasis in original).

■■■■ To resolve this dispute, we must construe the meaning of the relevant provisions of the GMRA.

> Where, as here, an issue requires this Court to interpret a statutory provision, we are presented with a question of law subject to plenary review. The purpose of statutory interpretation is to ascertain the General Assembly's intent and give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision.

*Mohamed v. Com., Dept. of Transp., Bureau of Motor Vehicles,* 615 Pa. 6, 40 A.3d 1186, 1192–1193 (2012) (some internal quotation marks and citations omitted).

The GMRA provides as follows.

> A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.

58 P.S. § 33.

Our research has revealed scant authority regarding the technical requirements for compliance with the GMRA. Nevertheless, we deem the terms of the statute clear and unambiguous and the provision's intent to protect Lessors plain. First, we note that the GMRA applies to leases **and other agreements,** conveying the right to remove and recover oil or gas from a property. Consequently, the fact that the royalty clause in question appears in the amending 2005 Letter Agreement, which the lease references as governing it, does not preclude the Act's application. Further, the Act does not merely require the designation of a minimum royalty in a lease, but compels a "guarantee" of at least a one-eighth royalty.

Accordingly, we conclude that a provision in a lease couched in the guise of an assignment back of a portion of a defined royalty that results in a lessor's net royalty being less than one-eighth fails to guarantee the minimum royalty mandated by the GMRA. To allow such provisions in a lease, where a trick of drafting permits the left hand to remove what the right hand has given, would render the GMRA meaningless and run contrary to the plain language and intent of the legislation. We conclude that a lease that contains a clause, which, when read alone, facially provides the lessor with at least the minimum royalty is nonetheless noncompliant with the GMRA, if, when read as a whole, it fails to guarantee that minimum royalty. The language of the act is equally clear that any lease that fails to comply with the GMRA "shall not be valid". *Id.*

■■■■ We agree with Appellees that the GMRA in no way restricts a lessor from assigning or conveying its royalty in whole or in part independent of the lease

or conveying agreement. Our decision here does not implicate a lessor's right in this regard. The GMRA concerns the validity of agreements conveying oil and gas removal rights. Where a provision in such an agreement requires assignment back of a portion of a royalty by the lessor to the lessee, it renders the agreement invalid if the minimum royalty is not thereby guaranteed.

Because the trial court erred as a matter of law in concluding on the pleadings in this declaratory judgment action that the PHT/Lancaster Lease Agreement as evidenced by all the above-referenced documents did not violate the GMRA, we are compelled to reverse the portion of the order of May 24, 2012, sustaining Southwestern's preliminary objections to PHT's counterclaim for declaratory judgment. We also reverse that portion of the trial court's December 19, 2012 order granting Lancaster's motion for judgment on the pleadings for PHT's joinder complaint, and that portion of the trial court's December 19, 2012 order sustaining Southwestern's and Lancaster's respective preliminary objections to MPT's amended counterclaim. To the extent the various motions and preliminary objections raised other grounds not addressed by the trial court, the same remain pending and we remand for further proceedings consistent with this opinion.[12]

Orders reversed. Case remanded. Jurisdiction relinquished.

12. Southwestern's Motion to Suppress and/or Quash portions of MPT's reply brief is denied.