J-A22008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR ACE SECURITIES CORP.  HOME EQUITY LOAN TRUST, SERIES 2005 - HE5, ASSET BACKED PASS-THROUGH CERTIFICATES | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 3226 EDA 2018 |
| AIMEE M. AVELLINO AND DREW AVELLINO | : : : : | |
| Appellants | : | |

Appeal from the Judgment Entered November 28, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2015-01936

BEFORE:   MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED OCTOBER 04, 2019**

Aimee M. Avellino and Drew A. Avellino (Mr. Avellino) (collectively, Appellants) appeal from the judgment entered in favor of Appellee HSBC Bank USA, National Association (Bank) and against Appellants.  After careful review, we affirm.

The parties stipulated to the facts of this case at trial.  On April 13, 2005, Appellants executed a mortgage and note on real property owned by Appellants in Bala Cynwyd, Montgomery County, Pennsylvania in favor of

---

[*] Retired Senior Judge assigned to the Superior Court.

Fremont Investment and Loan, for a principal amount of $446,500.00. Bank is the current holder of the mortgage and promissory note for the loan.

On April 11, 2008, Appellants entered into a loan modification agreement with Bank. The purpose of the loan modification agreement was to provide Appellants relief with their mortgage payments, on which they were in default. Because of the default, Appellants were also behind on their escrow payments for items such as taxes and insurance premiums. The loan modification agreement changed the interest rate from an adjustable rate to a 6.5% fixed rate, reduced the monthly principal and interest payments, and established an outstanding principal and interest balance of $521,964.31. The loan modification agreement did not, however, adjust Appellants' outstanding escrow balance of $9,027.75. Consequently, following execution of the loan modification agreement, Bank sent Appellants notice of the escrow shortage, and increased Appellants' monthly payment from $4,198.08 to $4,880.02 so that Appellants could pay off the escrow shortage over a 12-month period.

Appellants, however, disputed Bank's determination that there was an escrow shortage. Appellants asserted that the loan modification agreement resolved any issue regarding the escrow shortage by establishing a new monthly payment, which they believed covered any amounts due relating to escrow, in addition to their outstanding principal and interest. Bank claimed that the loan modification agreement only addressed Appellants' monthly principal and interest payment, and did not address Appellants' escrow

- 2 -

shortage. Consequently, following this dispute, Appellants tendered monthly mortgage payments that did not include payment for the escrow shortage. Unable to resolve this dispute, Bank eventually rejected Appellants' insufficient payments and called the loan in default. Appellants last made payment on their mortgage in March 2009.

On February 2, 2015, Bank filed a mortgage foreclosure action against Appellants. On August 18, 2015, Appellants filed an answer and new matter, and on September 29, 2015, Bank filed a reply to the new matter. On June 1, 2018, the case proceeded to a bench trial. The parties stipulated to the facts and agreed that all exhibits were admissible, but reserved challenges to the accuracy of the information contained in the exhibits.

On August 21, 2018, the trial court ruled in favor of Bank, concluding that Appellants were in default of the mortgage and the loan modification agreement. The trial court explained:

> [Bank] was entitled to judgment if "the mortgage is in default, the mortgagor has failed to pay on the obligation, and the recorded mortgage is in the specified amount." *Gerber v. Piergrossi*, [142 A.3d 854, 859 (Pa. Super. 2016), *appeal denied*, 166 A.3d 1215 (Pa. 2017)]. [Appellants] clearly were in default of the terms of the Mortgage and Loan Modification. Additionally, the very terms of the Loan Modification excluded the cost of escrow from the calculations within the Loan Modification. Therefore, the increase in monthly payments to account for escrow is not a breach of the Loan Modification.

Trial Court Opinion, 12/4/18, at 4.

On August 31, 2018, Appellants filed timely post-trial motions, which the trial court denied on October 1, 2018. On October 24, 2018, Appellants

- 3 -

J-A22008-19

filed a timely notice of appeal.[1]  Both the trial court and Appellants have complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following issues for review:

A.    Whether the [t]rial [c]ourt committed an error of law or abused its discretion by finding that [Bank]'s increases in the escrow amounts due were not a breach of the loan modification, especially when the increases in escrow were in violation of the Real Estate Settlement Procedures Act?

B.    Whether the [t]rial [c]ourt committed an error of law or abused its discretion by finding that [Bank] proved the precise amount due on the mortgage despite the [c]ourt not finding a specific date of default and imposing an artificial default date?

C.    Whether the [t]rial [c]ourt committed an error of law or abused its discretion by finding that [Appellants] are in default of the mortgage and loan modification and that [Bank] did not breach the terms of the loan modification?

Appellants' Brief at 1.

We begin with our standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court

_____

[1] Appellants filed a notice of appeal from the trial court's October 1, 2018 order denying their post-trial motions.  "An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions."  **Stahl Oil Co. v. Helsel**, 860 A.2d 508, 511 (Pa. Super. 2004).  Because the trial court ultimately entered judgment on November 28, 2018, "in the interests of judicial economy, we will consider this appeal as filed after entry of judgment."  **Tohan v. Owens-Corning Fiberglas Corp.**, 696 A.2d 1195, 1197 n.1 (Pa. Super. 1997).

- 4 -

only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 664-65 (Pa. Super. 2014).

In their first issue, Appellants argue that the trial court erred in concluding that Bank did not violate the loan modification agreement and the Federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, by requiring Appellants to pay off their escrow shortage. Appellants raise several points in support of these contentions.

First, Appellants argue that "Bank breached the Loan Modification contract by demanding additional escrow of $769.04 per month which [Appellants] could not afford." Appellants' Brief at 10. Appellants assert that the loan modification agreement brought their account, including their escrow shortage, current, and Bank breached the agreement by requiring Appellants to repay that shortage in addition to the newly agreed upon monthly payments.

In finding no merit to this issue, the trial court explained:

[Appellants'] . . . allege this [c]ourt erred in not finding the adjustments in escrow payments to be a breach of the loan modification. The loan modification required [Appellants] to comply with their agreements to pay escrow items under their

security items. Under their original mortgage, [Appellants] were obligated to pay for escrow items, and to pay to the Lender the amount necessary to make up a shortage or deficiency in no more than 12 monthly payments. ***See*** P-4 ¶ 3 Funds for Escrow Items. [Bank was] entitled to seek payments for escrow under the terms of the loan modification, and thus, the adjustments in the escrow payments were permitted under the loan modification. The adjustments were in accordance [with], not in breach of, the modification. Thus, the evidence supports this [c]ourt's findings of fact, and the findings are not against the weight of the [evidence] or an abuse of discretion.

Trial Court Opinion, 12/4/18, at 8.

It is well-settled that:

In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Sw. Energy Prod. Co. v. Forest Res., LLC***, 83 A.3d 177, 187 (Pa. Super. 2013) (quotations and citations omitted)

Here, the record reflects that Paragraph 4 of the mortgage required Appellants to repay Bank any escrow shortages in no more than 12 monthly installments:

If there is a shortage of Funds held in escrow, as defined under RESPA, [Bank] shall notify [Appellants] as required by RESPA, and [Appellants] shall pay to [Bank] the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, [Bank] shall notify [Appellants] as required by RESPA, and [Appellants] shall pay to [Bank] the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Trial Exhibit P-4 (Mortgage), 4/13/05, at 6 ¶ 3.

Additionally, there is no language in the loan modification agreement that removes or amends Appellants' obligation to repay escrow shortages under the original mortgage. *See* Trial Exhibit P-8 (Loan Modification Agreement), 4/11/08. To the contrary, the loan modification agreement specifically instructed Appellants to:

> comply with all other covenants, agreements, and requirements of the Security Instrument [(Mortgage)], including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, **escrow items**, impounds, and all other payment that Borrower is obligated to make under the Security Instrument.

*Id.* at 2 ¶ 4 (emphasis added).

In short, the plain language of the loan modification agreement does not change or eliminate Appellants' obligation to pay any escrow shortages in 12 monthly payments upon notice from Bank. *See id.* We are bound by the plain language of both the mortgage and the loan modification agreement, and their clear and unambiguous terms. *See Sw. Energy Prod. Co.*, 83 A.3d at 187.

Moreover, Mr. Avellino acknowledged during his testimony at trial that the loan modification agreement only resolved issues relating to the principal and interest of the loan and did not reference any adjustments to Appellants' escrow obligations:

> Q. Would [the witness] agree that there is no escrow amount designated in P-8 [(the loan modification agreement)].

A. Yes. Like I said, I am having a hard time reading this, but from what I can see, I just see the principal amount.

Q. And that would make sense that [the] escrow amount is not designated in the [loan modification] agreement because the escrow is going [to] fluctuate over time up or down, depending on your taxes, or your insurance; right?

A. Slightly, yes. One way or the other, slightly, yes, I agree with that.

N.T., 6/1/18 (Vol. 2), at 94.

Mr. Avellino further acknowledged Appellants' original default, which impacted the escrow shortages:

Q. And you realized that in 2006 and 2007 you were in default which means that you were not actually paying the amounts that were due to pay your taxes and the escrow; right?

A. For a month, correct.

Q. At some point you had to catch up with these amounts; right?

A. Right.

*Id.* at 90.

Mr. Avellino's testimony indicated that Appellants had no expectation that the loan modification agreement would resolve escrow shortages, as the agreement did for Appellant's principal and interest payments. *See id.* at 90. Thus, not only did the plain language of the loan modification agreement fail to reveal any changes to Appellants' escrow obligations, but the testimony of Mr. Avellino reflects that the parties never expected that it would. *See Sw. Energy Prod. Co.*, 83 A.3d at 187.

Therefore, based upon our review of the record, including the original mortgage, the loan modification agreement, and Mr. Avellino's testimony, we conclude that the record supports the trial court's determination that the loan modification agreement did not resolve or terminate Appellants' escrow shortage, and their obligation to repay the shortage remained following the loan modification agreement. Accordingly, the trial court did not err in finding that Bank did not breach the loan modification agreement by requiring Appellants to repay their escrow shortage.

Second, although far from a model of clarity, Appellants assert there were several inconsistencies and inaccuracies in the testimony of Tonya Johnson (Johnson), who testified at trial on behalf of Bank, regarding the amount of Appellants' escrow shortage. Appellants appear to argue that these inconsistencies somehow excuse their default.

We find this argument waived, as Appellants did not raise it in their Pa.R.A.P. 1925(b) statement. This Court has summarized the prevailing law:

> Pa.R.A.P. 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ('Statement')." Rule 1925 also states that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). In **Commonwealth v. Lord**, [] 719 A.2d 306 ([Pa.] 1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309; **see also**

> ***Commonwealth v. Castillo***, [] 888 A.2d 775, 780 ([Pa.] 2005) (stating any issues not raised in a Rule 1925(b) statement are deemed waived). This Court has held that "[o]ur Supreme Court intended the holding in ***Lord*** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" ***Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original) (quoting ***Commonwealth v. Schofield***, [] 888 A.2d 771, 774 ([Pa.] 2005).

***U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Tr. Fund v. Hua***, 193 A.3d 994, 996–97 (Pa. Super. 2018).

Appellants' Rule 1925(b) statement makes no claim of error regarding any inconsistencies in Johnson's testimony as it related to Appellants' escrow shortage. Thus, we conclude that Appellants have not preserved this argument for appeal. Moreover, even if Appellants had included such an argument in their Rule 1925(b) statement, Appellants' brief fails to develop how such inconsistencies provide them with a basis for relief. It is well settled that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Bombar v. W. Am. Ins. Co.***, 932 A.2d 78, 93 (Pa. Super. 2007). Therefore, this argument fails.

Third, Appellants cryptically argue that Bank violated RESPA by adjusting Appellants' escrow payments more than once per year, and the alleged violation somehow excuses Appellants' default. Appellants assert that RESPA permits a lender to change escrow payments only once per year.

Pertinent to this issue, RESPA states:

**(c) Escrow account statements**

* * *

**(2) Annual statement**

(A) In general

Any servicer that has established or continued an escrow account in connection with a federally related mortgage loan shall submit to the borrower for which the escrow account has been established or continued a statement clearly itemizing, for each period described in subparagraph (B) (during which the servicer services the escrow account), the amount of the borrower's current monthly payment, the portion of the monthly payment being placed in the escrow account, the total amount paid into the escrow account during the period, the total amount paid out of the escrow account during the period for taxes, insurance premiums, and other charges (as separately identified), and the balance in the escrow account at the conclusion of the period.

(B) Time of submission

The statement required under subparagraph (A) shall be submitted to the borrower **not less than once for each 12-month period**, the first such period beginning on the first January 1st that occurs after November 28, 1990, and shall be submitted not more than 30 days after the conclusion of each such 1-year period.

12 U.S.C.A. § 2609(c)(2) (emphasis added).

Section 2609 also states:

**(b) Notification of shortage in escrow account**

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer (as the term is defined in section 2605(i) of this title) of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the

property, the servicer shall notify the borrower **not less than annually** of any shortage of funds in the escrow account.

12 U.S.C. § 2609(b) (emphasis added).

Nothing in Section 2609 or any of the authority cited by Appellants precludes a lender from changing escrow payment amounts more than once per year. Moreover, even if RESPA did limit changes to escrow payments to once per year, Appellants cite no authority for the proposition that violating such a provision excuses default or constitutes a defense in a mortgage foreclosure action. Accordingly, this argument lacks merit.

In their second issue, Appellants argue that the trial court erred in finding Appellants in default because Bank failed to prove the amount due on the loan. Specifically, Appellants contend that Bank failed to present complete, accurate, and trustworthy records of the actual amount Appellants owed to Bank.

In a mortgage foreclosure complaint, the mortgagee must set forth the following:

(1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;

(2) a description of the land subject to the mortgage;

(3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;

(4) a specific averment of default;

(5) an itemized statement of the amount due; and

(6) a demand for judgment for the amount due.

Pa.R.Civ.P. 1147(a).

Appellants cite **U.S. Bank, N.A. v. Pautenis**, 118 A.3d 386 (Pa. Super. 2015) in support of their argument. In **Pautenis**, this Court stated that "proof of the amount of indebtedness is an essential element of a claim in mortgage foreclosure." **Id.** at 394 (quotations and citation omitted). We explained:

> "The sole purpose of the judgment obtained through an action of mortgage foreclosure is to effect a judicial sale of the mortgaged property," as the judgment is *de terris* (against the land), not *in personam*. **Meco Realty Co. v. Burns**, 200 A.2d 869, 871 (Pa. 1964). The precise amount due on a mortgage is therefore "essential," as "[a] sheriff could not possibly distribute the proceeds of a foreclosure sale among the various parties in interest without knowing the exact extent of the claim of the foreclosing mortgagee." 4 Goodrich Amram 2d § 1147(6):1 (Amram commentary).

**Id.** at 94 (citation modified).

In **Pautenis** we upheld the trial court's dismissal of U.S. Bank's mortgage foreclosure complaint based, in part, upon the determination that the borrower was unable to determine the precise amount owed to U.S. Bank because the payment history reports did not cover the entire duration of the loan. **Id.** at 397. Thus, we concluded that the borrower's general denial in her answer as to the amount owed to U.S. Bank did not constitute an

admission because she "did not have sufficient knowledge upon which to base a specific denial as to the amount owed on the loan."[2] *Id.*

This case, however, is readily distinguishable from *Pautenis*, as Bank provided evidence of the precise amount Appellants owed to Bank in terms of unpaid principal ($507,791.54), interest ($306,937.65), and escrow ($103,628.62), as well as records of each payment Appellants made during the lifetime of the loan. *See* Trial Exhibits P-16 & P-17. As mentioned above, the parties stipulated to the admission of this evidence. This Court has explained that "stipulations are binding upon the court as well as on the parties agreeing to them." *Kershner v. Prudential Ins. Co.*, 554 A.2d 964, 966 (Pa. Super. 1989) (*en banc*). Accordingly, we conclude there is no merit to Appellants' claim that Bank failed to provide evidence of the precise amount due.

In their third and final issue, Appellants argue that the trial court erred in determining that Appellants defaulted on their mortgage loan. Appellants assert that they fully complied with the loan modification agreement, which they maintain resolved all issues relating to their past due balances, including the escrow shortage. Appellants also fault Bank for refusing to accept

---

[2] "[A] borrower's general denial in an answer to a complaint in a mortgage foreclosure action is considered an admission, as the borrower and the mortgage company are the only entities that would have sufficient information upon which to base a specific denial of the averments." *Pautenis*, 118 A.3d 386, 395 (Pa. Super. 2015).

payments from Appellants after March 2009 because of Appellants' failure to repay their escrow shortage.

We reiterate that the loan modification agreement did not address any shortages on the part of Appellants as it related to their escrow account. ***See***

***supra***, at 9. Likewise, Bank did not breach the loan modification agreement when Bank sought repayment from Appellants for their escrow shortage. ***See***

***id.*** Thus, any payments Appellants made in accordance with the loan modification agreement did not resolve their escrow shortage. Additionally, we find unavailing Appellants' claim that they are excused from default because of Bank's refusal to accept payment from Appellants after March 2009. The terms of the mortgage expressly gave Bank the right to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." Trial Exhibit P-4 (Mortgage), 4/13/05, at 4 ¶ 1.

In sum, Appellants have not paid their mortgage in over a decade. The parties entered into a loan modification agreement that resolved Appellants past due principal and interest payments, but did not affect Appellants escrow shortage. Bank was entitled to seek payment of the escrow shortage, and when Appellants did not pay it, Bank was entitled to refuse further payment from Appellants and file a mortgage foreclosure action. ***See id.***; ***see also***

***Bank of Am., N.A. v. Gibson***, 102 A.3d 462, 464 (Pa. Super. 2014) ("The holder of a mortgage has the right, upon default, to bring a foreclosure

action."). Accordingly, as the record supports the trial court's determination that Appellants were in default, Appellants final issue lacks merit. ***See Stephan***, 100 A.3d at 664-65.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/19