J-A30030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ABC PEDIATRICS HHC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HEALTH PARTNERS PLANS FORMERLY KNOWN AS HEALTH PARTNERS PHILADELPHIA | |
| Appellee | No. 1205 EDA 2014 |

Appeal from the Order Entered April 8, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2013 No. 02297

BEFORE:  MUNDY, J., FITZGERALD, J.*, and PLATT, J.**

MEMORANDUM BY MUNDY, J.:                    **FILED FEBRUARY 27, 2015**

Appellant, ABC Pediatrics HHC, appeals from the April 8, 2014 order granting Appellee, Health Partners Plans', motion for judgment on the pleadings on the basis that Appellant's claims were covered by an earlier settlement and release agreement entered into between the parties.  After careful review, we affirm.

The trial court aptly summarized the factual and procedural history of this case as follows.

> The present action was instituted by plaintiff [Appellant] against [] Health Partners Plans [] to recover for [Appellant's] loss of business. [Appellant] is a licensed home health care company that provided medical services to home-confined pregnant, postpartum and other infirm patients. [Health Partners Plans] is a Pennsylvania based non-

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

profit health maintenance organization that manages the medical care of its "members" through [a] network of medical, dental, and mental health care providers. On February 3, 2011, [Appellant] and [Health Partners Plans] entered into an ancillary provider agreement wherein [Health Partners Plans] contracted [Appellant] to provide home health care services to its members. The agreement was renewed on November 17, 2012.

In or about January 2013, the parties disagreed about the processing and payment of certain claims submitted by [Appellant] related to [Health Partners Plans'] Well Mom/Well Baby Program. During the spring of 2013, the parties engaged in discussions and negotiations regarding the disputed claims. As a result of the negotiations the parties executed a formal Settlement and Release Agreement in July 2013. The Settlement and Release provided in pertinent part as follows:

> … WHEREAS, the parties disputed either formally or informally various matters including payment methodologies; and/or payment and/or processing of claims with dates of service through and including July 15, 2013 (collectively, the "Disputed Claims"); and/or interpretation of contract provision in relation to the Disputed Claims; and
>
> NOW THEREFORE, in consideration of the terms and conditions set forth herein, the undersigned parties… with intent to be bound legally hereby, agree as follows: …
>
> 3. Except as to the obligations created by this Agreement, each party and their Successors and Assigns, hereby release and forever discharge the other party and its respective Successors and Assigns, from any all claims, suits, causes of action, actions, rights, damages, expenses and all consequential damages of any kind, whether arising in law or equity, in contract or tort, as well as, any claim

for attorney's fees and exemplary and/or punitive damages which are based upon, arise out of, or are connected with, or were raised or could have been raised in connection with the Disputed Claims only. Provider explicitly reserves any other rights available to it pursuant to the provider agreement unrelated to the Disputed Claims.

On August 5, 2013, [Health Partners Plans] paid to [Appellant] the sum of $75,000.00 by bank draft which was accepted and deposited by [Appellant].[1]

In October 2013, [Appellant] filed the instant action against [Health Partners Plans] seeking $2,000,000.00 in breach of contract damages alleging that [Health Partners Plans'] failure to pay timely the disputed claims in January 2013 breached the parties' provider agreement, and that such breach caused plaintiff irreparable harm including in particular the destruction of [Appellant's] business. In [Health Partners Plans'] answer and new matter, [Health Partners Plans] raised affirmative defenses including but not limited to the signed release bars [Appellant's] cause of action and accord and satisfaction. After the pleadings were closed, [Health Partners Plans] filed the instant motion for judgment on the pleadings.

_____

[1] [Appellant] alleges in the complaint that on or about March 25, 2013, it closed its doors and ceased doing business.

Trial Court Opinion, 4/8/14, at 1-2 (footnote in original).

On April 8, 2014, the trial court issued an order, with an accompanying opinion, granting Health Partner Plans' motion for judgment on the pleadings. The trial court entered judgment in favor of Health Partner Plans

and dismissed Appellant's complaint. On April 10, 2014, Appellant filed a timely notice of appeal.[1]

On appeal, Appellant raises the following issue for our review.

> Did the trial court err in dismissing Appellant's complaint through judgment on the pleadings based upon a separate release executed in the matter?

Appellant's Brief at 9.

Our review of a challenge to a trial court's grant of judgment on the pleadings is subject to the following standards.

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

---

[1] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925. The trial court issued a Rule 1925(a) opinion referencing its April 8, 2014 opinion as containing the reasons for its ruling.

> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***Southwestern Energy Prod. Co. v. Forest Res. LLC***, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted), *appeal denied*, 96 A.3d 1029 (Pa. 2014).

Instantly, the trial court based its grant of Health Partner Plans' motion for judgment on the pleadings on its interpretation of the parties' settlement agreement as precluding Appellant's suit. Trial Court Opinion, 4/8/14, at 3.

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. …

> Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement.

***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 517-518 (Pa. Super. 2009) (citations omitted).

> In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Southwestern***, ***supra*** at 187 (citation omitted).

> With specific reference to what constitutes "ambiguity" in the context of contract interpretation, our Supreme Court has opined as follows:

>> Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

***Lenau v. Co-eXprise, Inc.***, 102 A.3d 423, 430 (Pa. Super. 2014), *quoting*

***Madison Constr. Co. v. Harleysville Mut. Ins. Co.***, 735 A.2d 100, 106

(Pa. 1999) (internal quotation marks and citations omitted).

Appellant alleges the trial court erred in construing the parties' July 30, 2013 release as a general release that precluded Appellant's instant complaint against Health Partner Plans for loss of business. Appellant's Brief at 13. Appellant maintains the release was limited and did not encompass the claims it raises in the instant complaint. *Id.* at 12-13

> The crux of the disagreement in this matter is whether or not the parties **July 15, 2013** settlement and release [] was intended to cover and bar [Appellant's] subsequent claim in contract for loss of business. A plain reading of the Release reveals the parties' settlement was not a general release. The Release was narrowly tailored to cover only the bills which Health Partners had failed to pay and was not intended to bar a law suit for Health Partners pattern and practice of late payments, which late payments destroyed [Appellant's] business.

*Id.* (citations omitted, emphasis added).[2] Appellant maintains that the qualifying language, "[Appellant] explicitly reserves any other rights available to it pursuant to the provider agreement unrelated to the Disputed Claims," contained in Paragraph 3 of the settlement and release agreement and other references to "Disputed Claims," means the release was not

_____

[2] Although referencing a "July **15**, 2013" agreement, Appellant actually, albeit mistakenly, quotes provisions from an unexecuted July **24**, 2013 draft version of the settlement agreement. However, much of the specific language that Appellant emphasizes as supporting his argument was either changed or omitted in the final agreement executed on July **30**, 2013. **Compare**, Health Partner Plans' Answer and New Matter, 11/12/13, Exhibit A - Settlement and Release Agreement (July 30, 2013), **with** Appellant's Answer to Motion for Judgment on the Pleadings, 12/10/13, Exhibit A - Settlement and Release Agreement (July 24, 2013).

general. *Id.* at 14, *quoting* Health Partner Plans' Answer and New Matter, 11/12/13, Exhibit A - Settlement and Release Agreement at 2, ¶ 3. Rather, Appellant argues the term "Disputed Claims" was defined in the settlement and release agreement as "payment methodologies; and/or processing of claims with dates of service through and including July 15, 2013." *Id.* at 17, *quoting* Health Partner Plans' Answer and New Matter, Exhibit A - Settlement and Release Agreement at 1. However, Appellant's quote is incomplete, as the final version of the settlement and release agreement prefaced that definition with, "various matters including payment methodologies…." Health Partner Plans' Answer and New Matter, 11/12/13, Exhibit A - Settlement and Release Agreement at 2, ¶ 3. Thus, in the following averment from its complaint against Health Partners Plans, Appellant maintains its claim falls outside the terms of the release.

> 16. The aforestated settlement agreement and release disposed of the claims for unpaid bills only.
>
> 17. Because billed revenue was not coming into the business on a timely basis, plaintiff was unable to pay its fixed expenses ….

Appellant's Complaint, 10/24/13, at 4, ¶¶ 16, 17.

The trial court, contrary to Appellant's implication, did not determine the release provision in the settlement agreement was a general release. Rather the trial court concluded, "[t]he claim alleged in [Appellant's] complaint falls squarely within the scope of disputed claims as defined by the

Settlement and Release Agreement." Trial Court Opinion, 4/8/14, at 4. We

agree.

The settlement and release agreement provides as follows.

> 3.      Except as to the obligations created by this Agreement; each party and their Successors and Assigns, hereby release and forever discharge the other party –and its respective Successors and Assigns, from any and **all claims, suits, causes of action, actions, rights, damages, expenses and all consequential damages of any kind, whether arising in law or equity, in contract or tort, as well as, any claim for attorney's fees and exemplary and/or punitive damages which are based upon, arise out of, or are connected with, or were raised or could have been raised in connection with the Disputed Claims only**. Provider explicitly reserves any other rights available to it pursuant to the provider agreement unrelated to the Disputed Claims.

> 4.      This Agreement is intended to compromise and **settle fully and forever all claims of every kind, character and description of the undersigned parties which were or could have been raised in connection with the Disputed Claims.** Nothing in this Agreement shall be construed as an admission of any impropriety or liability on the part of either party.

Health Partner Plans' Answer and New Matter, 11/12/13, Exhibit A -

Settlement and Release Agreement at 2, ¶¶ 3, 4. (emphasis added).[3]

_____

[3] "Consequential damages are generally understood to be other damages which naturally and proximately flow from the breach of contract." *Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254, 264 n.15 (Pa. Super. 2013)
*(Footnote Continued Next Page)*

Appellant's claim clearly seeks damages allegedly stemming from Health Partners Plans' failure to make payments under the parties' provider agreement, which lie squarely within the "Disputed Claims" defined in the settlement and release agreement. We agree with the trial court that "[t]he claim for loss of destruction of business or loss of profits is a consequential damage arising from defendant's failure to pay the disputed claims." Trial Court Opinion, 4/8/14, at 5. We also agree with the trial court that "there is no ambiguity in the Settlement and Release Agreement." *Id.*; *see Lenau*, *supra.* We therefore conclude the trial court did not err in granting Health Partners Plans' motion for judgment on the pleadings, because, as a matter of law, its cause of action was the subject of a valid settlement and release agreement, and Appellant was not entitled to any relief. *See Southwestern*, *supra* at 185. Accordingly, we affirm the trial court's April 8, 2014 order granting Health Partners Plans' judgment on the pleadings and dismissing Appellant's complaint.

Order affirmed.

_____

*(Footnote Continued)*

(internal quotation marks and citation omitted). "*Consequential damages.* Losses that do not flow directly and immediately from an injurious act but that result indirectly from the act." Black's Law Dictionary 416 (8th ed. 2004).

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/27/2015</u>