J-A09041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PENNSYLVANIA WAREHOUSE BEVERAGE STORES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BROOKHAVEN MZL, LP | |
| Appellant | No. 2614 EDA 2014 |

Appeal from the Orders entered August 27, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No: 2013-3306

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED MAY 12, 2015**

Brookhaven MZL, LP, owns a shopping center in Delaware County. Pennsylvania Warehouse Beverage Stores, Inc., (PA Beverage), a beer distributor, is Brookhaven's tenant.  This action emanates from a dispute over the terms of the parties' commercial lease.  On August 27, 2014,[1] the trial court entered an order granting PA Beverage's motion for summary judgment, and declaring that PA Beverage validly exercised its option to extend the lease to March 31, 2018.  The trial court entered a second order denying Brookhaven's motion for summary judgment on its counterclaim for double holdover rent.  Because the trial court erred as a matter of law in construing the commercial lease, we reverse both orders.

---

[1] The orders are dated August 26, 2014, but were entered the following day.

PA Beverage is a Pennsylvania corporation that operates a single-location beer distributor on Edgemont Avenue, Brookhaven Borough. Brookhaven, a Delaware limited partnership, is the current owner of the shopping center in which PA Beverage is located, Plaza 352. On December 31, 1991, PA Beverage entered into a commercial lease (the 1991 Lease) with Brookhaven's predecessor, First Republic Corporation of America, to rent space in Plaza 352 for five years. Article I of the 1991 Lease[2] allowed PA Beverage to renew the lease under the following terms:

> Provided that [PA Beverage] has complied with the terms and conditions of this lease applicable to it, [PA Beverage] shall have three (3) five (5)-year options under the same terms and conditions hereof . . . .

1991 Lease, art. I. The renewal option included increases in rent and common-area maintenance fees. *Id.* PA Beverage and First Republic later agreed to one-page modifications to the 1991 Lease in 2002 and 2008 (Modifications). The 2002 and 2008 Modifications granted PA Beverage additional extension options, and changed the rent and common-area maintenance fees. Both Modifications contained the following clause:

> All other terms, conditions, covenants and agreements contained in [the 1991] Lease, as heretofore modified not inconsistent with this Agreement, shall remain unchanged and hereby ratified and confirmed and incorporated herein by reference.

_____

[2] Copies of the 1991 Lease, the 2002 Modification, and the 2008 Modification are attached as exhibits A, A-1, and A-2 to PA Beverage's amended complaint.

> It is expressly agreed that, if prior to the effective date of the terms provided in this Agreement, [PA Beverage] shall default in any of the terms, conditions, covenants and agreements contained in the aforementioned Lease, this agreement, at the option of Landlord and without prior notice to [PA Beverage], shall be void, null and of no effect, as though the same had never been made.

2002 Modification; 2008 Modification.

This case concerns PA Beverage's exercising of the extension option contained in the 2008 Modification, which extended its lease until March 31, 2018. The 2008 Modification required PA Beverage to provide notice of intent to exercise this option no later than October 1, 2012, by certified mail, return receipt requested.

Also pertinent to this dispute is Article II of the 1991 Lease, unaffected by the 2002 and 2008 Modifications:

> [PA Beverage] hereby agrees to pay the Landlord without demand at its office, or at such other place or places as Landlord may from time to time designate in writing, the following rents for the aforesaid leased premises for the terms of this lease, to wit
>
> Minimum Rent: the fixed minimum annual rent during the term of this lease shall be payable by [PA Beverage] in equal monthly installments on or before the first day of each month in advance, and without any deduction or set-off whatsoever . . . .

1991 Lease, art. II. The 1991 Lease further provides that PA Beverage is to pay the landlord the real estate tax as additional rent, due ten days after the real estate taxes are payable to the relevant taxing authority.

On August 15, 2012, Brookhaven bought Plaza 352 from First Republic. On August 28, 2012, Brookhaven sent a letter to PA Beverage, informing it of the money it owed First Republic in the amount of $4,043.72,

and to Brookhaven in the amount of $9,124.62, as of August 15, 2012. The money PA Beverage owed to First Republic included July and August rent, and 2011 and 2012 real estate taxes. The money PA Beverage owed to Brookhaven included August rent and 2012 real estate taxes.

On September 20, 2012, PA Beverage attempted to exercise its option to extend the lease to 2018 per the terms of the 2008 Modification. Brookhaven received PA Beverage's letter on September 24, 2012.

As of October 1, 2012, PA Beverage allegedly owed its current and former landlords more than $16,000.00 in past-due rent. On October 1, 2012, Brookhaven's agent sent a letter to PA Beverage entitled "NOTICE OF DEFAULT/ NON-EXERCISE OF OPTION." In the letter, Brookhaven's agent informed PA Beverage that it was in default of the lease, because it owed past due rent and real estate taxes.[3] The letter further informed PA Beverage that "according to Article I, Renewal Option, Tenant must comply with all terms and conditions to be in good standing in order to exercise a renewal option." *Id.* Brookhaven stated that PA Beverage could not exercise the extension option allowed by the 2008 Modification, because it had failed to comply with the lease by not timely paying rent.

On March 28, 2013, Brookhaven notified PA Beverage that its lease expired on March 31, 2013, and it thereafter would be a holdover tenant,

---

[3] A copy of the letter is attached to PA Beverage's amended complaint as exhibit D.

liable for double rent under Articles II and XXIV of the 1991 Lease. On April 4, 2013, Brookhaven again notified PA Beverage that it was in default, because it did not pay the double rent, and did not vacate and surrender the premises.

On April 10, 2013, PA Beverage filed suit against Brookhaven seeking declaratory relief and damages. In its amended complaint, PA Beverage requested the trial court to declare that it was not in default of the lease agreement or a holdover tenant. PA Beverage also sought damages for breach of the modified terms of the lease and for breach of the covenant of good faith and fair dealing. Brookhaven answered and counterclaimed for double holdover rent and attorneys' fees as provided by the 1991 Lease and 2002 and 2008 Modifications.

On July 18, 2014, the parties filed motions for summary judgment. On July 26, 2014, the trial court issued two responsive orders. The first order granted PA Beverage's motion for summary judgment, and the second order denied Brookhaven's motion for summary judgment on its counterclaim. Brookhaven timely appealed.[4] The trial court did not order Brookhaven to file a concise statement, but did issue an opinion under Pa.R.A.P. 1925(a). In the Rule 1925(a) opinion, the trial court explained

_____

[4] We have jurisdiction over this appeal under 42 Pa.C.S.A. § 742, because the trial court's two orders disposed of all claims and of all parties. *See* Pa.R.A.P. 341(b)(1).

that PA Beverage cured its default and therefore validly exercised its option to extend the lease.

On appeal, Brookhaven presents two questions for review:

1. Did the [t]rial [c]ourt err in declaring that the term of the commercial lease was extended until March 31, 2018?

2. Did the [t]rial [c]ourt err in denying Brookhaven summary judgment on its counterclaim for holdover rent?

Appellant's Brief at 4.

Entry of summary judgment is proper:

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2.  In response:

the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. No. 1035.3(a) (*Note* omitted).

On appeal from an order granting or denying summary judgment:

[O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*). Furthermore, "in reviewing an issue of law in a declaratory judgment action, our scope of review is plenary and our standard of review is *de novo*." *Missett v. Hub Int'l Pa., LLC*, 6 A.3d 530, 534 (Pa. Super. 2010).

This case turns on the interpretation of the 1991 Lease and the 2008 Modification. Contract law and general contract principles govern the interpretation of lease agreements. *Newman Dev. Group of Pottstown, LLC v. Genunardi's Family Mkt., Inc.*, 98 A.3d 645, 653 n.4 (Pa. Super. 2014) (*en banc*).

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole

instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (internal quotations and citations omitted).

In this case, the 2002 and 2008 Modifications refer to and incorporate the 1991 Lease. "It is a general rule of law that where one contract refers to and incorporates the provisions of another[,] both shall be construed together." *Shehadi v. Ne. Nat'l Bank of Pa.*, 378 A.2d 304, 306 (Pa. 1977) (quoting *Chicago Pneumatic Tool Co. v. Ziegler*, 151 F.2d 784, 795 (3d Cir. 1945)). A court should not read clauses in a contract as independent agreements haphazardly thrown together without considering the clauses' combined effects. *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. 2013); *see also Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 640-41 (W.D. Pa. 2013) (quoting *In re Alloy Mfg. Co. Emp. Tr.*, 192 A.2d 394, 396 (Pa. 1966)) ("[T]he intention of parties to a written instrument is to be garnered from a reading of the entire writing and not from detached portions, it being necessary to consider every part thereof in order to resolve the meaning of a particular part as well as that of the whole."). Thus, a court should never interpret terms in one section of a contract in a way that nullifies other terms in the same agreement. *Sw. Energy Prod.*, 83 A.3d at 187. Furthermore, in interpreting a contract, specific terms control over general terms. *Id.*

In addition, the issue in this case is the construction of PA Beverage's option to extend the lease. Although ambiguous terms in a lease are construed against the lessor/landlord, optional portions of leases are construed against the person holding the option. *W. Penn Realty Co. v. Acme Mkts., Inc.*, 303 A.2d 836, 837 (Pa. Super. 1973) (*per curiam*); *see also W. Sav. Fund Soc'y of Phila. v. SEPTA*, 427 A.2d 175, 181 (Pa. Super. 1981) (*en banc*) (stating "fairness militates against demanding more from the optionor than he lawfully agreed to give and instead obligates us to strictly enforce the agreement to insure that neither party is prejudiced by a judicially authored revision of the agreement").

Succinctly stated, we must decide whether PA Beverage's right to exercise the extension option was contingent (1) on being in compliance with the terms of the lease, as Brookhaven argues; or (2) on merely not being in default, as PA Beverage argues. For the following reasons, we hold the former construction is correct, because the 1991 Lease and 2008 Modification unambiguously required PA Beverage to be in compliance to exercise the extension option.

Article I of the 1991 Lease makes PA Beverage's exercise option right dependent on the condition "[p]rovided that Tenant has complied with the terms of the lease applicable to it." 1991 Lease, art. I. Both the 2002 and 2008 Modifications state, "all other terms, conditions, covenants, and agreements contained in the [lease] as heretofore modified not inconsistent with this Agreement, shall remain unchanged and hereby ratified and

confirmed and incorporated herein by reference." 2002 Modification; 2008 Modification. The 2008 Modification required PA Beverage to notify the landlord of its exercising of the extension option before October 1, 2012. Accordingly, to exercise the extension option, PA Beverage must have been in compliance with all the applicable conditions of the lease. We find this provision to be unambiguous, meaning we need not employ other rules of construing leases.

Article II of the 1991 Lease requires PA Beverage to pay rent without demand. Rent is the fixed minimum annual rent due on the first of each month without any setoff. Further, PA Beverage agreed to pay the landlord the applicable real estate taxes in full as additional rent within ten days after the taxes were due to the relevant governmental authority. PA Beverage cannot dispute that, as of October 1, 2012, it was behind on its rent payments. Thus, it was not in compliance with Article II, and therefore the terms of the lease applicable to it. Because PA Beverage was not in compliance with the lease, it could not validly exercise the option.

The trial court and PA Beverage incorrectly overlay language regarding "event of default" from Article XV onto Article II. It is true that Article XV defines "event of default" as, *inter alia*, the failure to pay rent, and requires the landlord to give notice of default and allow PA Beverage to cure the default. Article XV, however, does not govern the extension option. Article II does, and nothing in the 2008 Modification changes the material term conditioning exercise of the option on PA Beverage "compl[ying] with the

terms of the lease applicable to it." By the 1991 Lease's very terms, "not being in default" is not the same as "being in compliance." Finally, importing the "event of default" language into the option provision impermissibly alters the parties' agreement.

PA Beverage attempts to avoid the lease's clear language by quoting the following passage from the 2008 Modification:

> It is expressly agreed that, if prior to the effective date of the terms provided in **this Agreement**, [PA Beverage] shall **default** in any of the terms, conditions, covenants and agreements contained in the aforementioned Lease, this agreement, at the option of the Landlord and without prior notice to Tenant, shall be void, null and of no effect, as though the same had never been made.

Appellee's Brief at 12 (quoting 2008 Modification) (first emphasis added by the Court; second emphasis in original). This argument is a red herring. The language quoted above, *i.e.*, "this Agreement," plainly refers to the 2008 Modification—not the terms of Article II regarding exercise of the extension option.[5]

---

[5] PA Beverage's variance argument is similarly meritless. A variance exists if there is a material difference between the causes of action pleaded and the proof provided at trial. **See Reynolds v. Thomas Jefferson Univ. Hosp.**, 676 A.2d 1205, 1209 (Pa. Super. 1996). Here, PA Beverage disputes the amount of money it owed to its current and former landlords as of October 1, 2012. But the amount of money owed has nothing to do with the cause of action, and it cannot defeat a summary judgment motion. To the extent that PA Beverage owed **any** back rent to its current or former landlords on October 1, 2012, it was not in compliance with the terms of the lease. Brookhaven has taken this position since at least the inception of litigation.

In sum, to exercise the extension option as provided by the 2008 Modification and the 1991 Lease, PA Beverage had to be in compliance with the terms of its lease, *i.e.*, among other things, it had to be current on its financial obligations. Because PA Beverage was not in compliance with the terms of its lease on October 1, 2012, it could not exercise the option to extend the lease term.

Further, because the trial court erred in ruling that PA Beverage validly exercised the extension option, it also erred in ruling that Brookhaven was not entitled to holdover rent. The trial court's second ruling was necessarily contingent on its finding that PA Beverage validly exercised the extension option. Because PA Beverage could not exercise the extension option, it became a holdover tenant when the lease term expired. Under the 1991 Lease, it became liable for double rent. Therefore, Brookhaven is entitled to summary judgment on its counterclaim regarding liability.

PA Beverage argues that material issues of fact exist regarding its liability for holdover rent. PA Beverage contends that its and First Republic's agents orally modified the 1991 Lease to allow for installments of yearly real estate tax payments, instead of a single lump sum payment. This argument is without merit. The 1991 Lease specifically forecloses oral modifications:

> [T]he failure of Landlord to insist in any one or more instances upon a strict performance of any covenant of this lease or to exercise any option or right herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, right, or option, but the same shall remain in full force and effect unless the contrary is **expressed in writing** by Landlord.

- 12 -

1991 Lease, art. XXIII (emphasis added). Moreover, to support its argument, PA Beverage cites only the allegations of its amended complaint. Claiming a factual dispute from the mere allegations of the pleadings is insufficient to overcome a summary judgment motion. ***See Bank of Am., N.A. v. Gibson***, 102 A.3d 462, 464 (Pa. Super. 2014) (citing Pa.R.C.P. No. 1035.3) ("In response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact."); ***see also DeWeese v. Anchor Hocking Consumer & Indus. Prods. Group***, 628 A.2d 421, 424 (Pa. Super. 1993) (plurality opinion) ("It is well-settled that a party may not defeat a motion for summary judgment by relying on the allegations of his complaint."). Assuming, *arguendo*, that PA Beverage and First Republic modified the lease, it was incumbent on PA Beverage to place supporting evidence of this in the record.[6] PA Beverage did not, so it failed to raise a factual dispute. Also, because Brookhaven is entitled to judgment as a matter of law, the trial court should have granted its motion for summary judgment regarding PA Beverage's liability for holdover rent.

In sum, the trial court erred as a matter of law in concluding that PA Beverage validly exercised the extension option contained in the 2008

_____

[6] PA Beverage pled in its amended complaint that an exchange of emails between it and First Republic confirmed the oral modification. Am. Compl., 11/22/13, ¶¶ 36-37. As already stated, PA Beverage could not rely on its pleadings to defeat summary judgment.

Modification to the 1991 Lease. Because PA Beverage failed to extend its lease, it became a holdover tenant after the lease expired. Therefore, Brookhaven was entitled to summary judgment both on the claims of PA Beverage's amended complaint, and on its counterclaim for holdover rent. We reverse both orders entered August 27, 2014.

Orders reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2015