J-A17005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY AND RYDER TRUCK RENTAL, INC., | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : | No. 2108 EDA 2020 |
| POCONO MOTOR FREIGHT, INC., MICHAEL J. PARKS, RITA HUGHES, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF BROOKE HUGHES, AND DANILLE TOOMEY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF CHANIYA MORRISON-TOOMEY | : : : : : : : : : : | |

Appeal from the Order Entered September 23, 2020
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 2019-06543

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 10, 2021**

This is a declaratory judgment action to determine insurance coverage. The trial court concluded that a primary insurance policy and certain excess policies afforded coverage to Pocono Motor Freight, Inc. ("Pocono"). Old Republic Insurance Company ("Old Republic") and Ryder Truck Rental, Inc. ("Ryder") have appealed, challenging the applicability of the excess policies. We find merit in their arguments and therefore reverse in part.

_____

* Retired Senior Judge assigned to the Superior Court.

After a tragic accident resulting in the deaths of Brooke Hughes and Chaniya Morrison-Toomey, the administratrixes of their estates, Rita Hughes and Danielle Toomey, filed suit against Pocono and its employee who was driving the tractor trailer at issue (collectively "Pocono"). They asserted wrongful death and survival claims ("underlying action"). Old Republic and Ryder filed this suit seeking a declaration that three excess insurance policies do not afford coverage for the claims against Pocono and its employee in the underlying action.

According to the Complaint, Ryder and Pocono were parties to a truck leasing agreement ("Lease Agreement"), under which Pocono leased tractor-trailer vehicles from Ryder. The Lease Agreement – which was attached to the Complaint – required Ryder to maintain automobile liability insurance covering Pocono, with a combined single limit of $1 million per occurrence.

> **The party designated on Schedule A (the "Insuring Party") agrees to furnish and maintain, at its sole cost, a policy of automobile liability insurance with limits specified on each Schedule A** for death, bodily injury and property damage, **covering both you and Ryder** as insureds for the ownership, maintenance, use and operation of each Vehicle ("Liability Insurance"). If you are the Insuring Party, the terms of the policy and the insurer must be acceptable to Ryder. **The Liability Insurance must provide that its coverage is primary and not additional or excess coverage over insurance otherwise available to either party**, must be equal in scope in all respects to the insurance coverage provided to you, and must include any and all statutory requirements of insurance imposed upon you and/or Ryder . . . **The Insuring Party agrees to designate the other party as an additional insured on the Liability Insurance** and to provide the other party with insurance certificates

evidencing the required coverage. Your certificate of insurance must include by special endorsement or otherwise, Ryder as an additional insured for all vehicles leased, rented, substituted, or supplied to you by Ryder.

Complaint, filed Aug. 19, 2019, at Ex. C, Truck Lease and Service Agreement at ¶ 9(A). Schedule A to the Lease Agreement identifies Ryder as the insuring party and the required policy limit as $1 million. **Id.** at Schedule A.

Ryder obtained a policy ("primary policy")[1] from Old Republic with a combined single limit of $1 million. The primary policy included an amendment that, by reference to the Lease Contract, had the effect of making lessees such as Pocono insureds.

Who is An Insured is amended to include the following: . . .

d. Any person or organization for whom the Named Insured is obligated by written agreement to provide liability insurance, but in no event for more or broader insurance than is afforded under this policy and in no event for more or broader insurance than is required by such contract.

Complaint, Ex. D, Amendments to the Business Auto Coverage Forms. Old Republic has been defending Pocono in the underlying suit pursuant to the primary policy.

Ryder also obtained three excess insurance policies through Old Republic. The first two were excess policies for $1 million in excess insurance

---

[1] The primary policy was policy Z-35726-38.

coverage ("Excess Policy 1" and "Excess Policy 2").[2] The third excess policy provided $7 million in auto liability coverage ("Excess Policy 3").[3]

Excess Policy 1 and Excess Policy 2 contain identical provisions that afford their excess coverage to "[a]ny additional insured under any policy of 'controlling underlying insurance.'" Complaint, Exs. E-F, Coverage Form at 2. The "controlling underlying insurance" for Excess Policy 1 is the underlying policy; for Excess Policy 2 it is Excess Policy 1.[4] As Pocono is an additional insured under the primary policy, it is thus an additional insured under Excess Policies 1 and 2.

However, both Excess Policies 1 and 2 also have identical provisions, in Section I.1.d., limiting the coverage provided to an additional insured where coverage is required by another contract or agreement, such as here. In those cases, coverage is limited to "the amount of insurance required by the contract, less any amounts payable by any 'controlling underlying insurance.'" *Id*. Section I.1.d. also states, "Additional Insured coverage provided by this insurance will not be broader than coverage provided by the 'controlling underlying insurance." *Id.*

Excess Policies 1 and 2, as well as the primary policy, all include an endorsement – the so-called "Driverless Autos" endorsement – that limits

---

[2] The first excess policy was policy MWZX-26664-07, and the second excess policy was policy MWZX-26665-07.

[3] Policy ZL-188-26.

[4] *See* Complaint, Ex. E, Declarations at 2; Ex. F, Declarations at 2.

coverage for "persons or organizations leasing /renting an automobile" to "the terms, including the limit or limits of liability," set forth "in the lease/rental agreements. . . ." Complaint, Exs. D-F, Driverless Autos Endorsement.

Excess Policy 3 has a different definition of "insured." It excludes from "insureds" any "person or organization, for whom the Named Insured has become obligated by a written lease or rental agreement to provide liability insurance under the 'controlling underlying insurance.'" Complaint, Ex. G, Who Is An Insured Amendment.

After the close of pleadings,[5] Hughes moved for judgment on the pleadings. She requested a declaration that the primary policy, Excess Policy 1, and Excess Policy 2 "apply to" the underlying accident and "are available sources of covered benefits" in the underlying action. She argued that Excess Policies 1 and 2 were ambiguous. She first noted that the provision of the Lease Agreement requiring insurance did not "exclude" excess insurance. Hughes' Brief in Support of Motion for Judgment on the Pleadings at 7. She also pointed out that Excess Policy 3 was unique among the three excess policies in explicitly excluding from the definition of an "insured" anyone for whom Ryder was contractually obligated to maintain insurance. She argued that if Ryder and Old Republic had intended to exclude Pocono as an insured under Excess Policies 1 and 2, they could have used such language but failed to do so. *Id.* at 8.

---

[5] Pocono and Parks participated in the proceedings below but have not filed briefs in this appeal.

She also maintained that the language in Section I.1.d. of Excess Policies 1 and 2, regarding the coverage afforded to an additional insured, was contradictory and inconsistent. She pointed to the sentence stating that an additional insured under the policies, such as Pocono, enjoys coverage no "broader than coverage provided by the 'controlling underlying insurance.'" She maintained that that sentence meant that the limit of Pocono's coverage under Excess Policies 1 and 2 was the same as the underlying coverages, *i.e.*, $1 million. *Id.*

Hughes argued that this provision conflicted with the preceding sentence. It states that the most Old Republic will pay under the policies is "the amount of insurance required by the contract, less any amounts payable by any 'controlling underlying insurance.'" According to Hughes, this formula rendered excess coverage illusory. *Id.* She argued that Excess Policies 1 and 2 were thus ambiguous and, construing them against Old Republic as the drafter, covered Pocono. *Id.* at 9.

Old Republic and Ryder responded to Hughes' motion and filed a cross-motion for judgment on the pleadings. They conceded that the primary policy "provides 'primary' liability coverage on behalf of the defendants named in the underlying lawsuits," as the Lease Agreement required. Plaintiffs' Brief in Support of Motion for Judgment on the Pleadings at 4.

However, they disputed the availability of Excess Policies 1 and 2. They stressed the Lease Agreement's and the policies' language, which they maintained was clear and unambiguous. They argued that the court could not

ignore the Lease Agreement's explicit provision for $1 million in coverage simply because the Lease Agreement did not also say that the lessee would not be entitled to excess coverage in addition to the $1 million. They also rejected any claim that the unique definition of "insured" in Excess Policy 3 rendered Excess Policies 1 and 2 ambiguous.

Old Republic and Ryder also argued that the formula in Section I.1.d. limiting coverage for additional insureds did not result in illusory coverage. They argued that Ryder's other customers may pay for, and Ryder may agree in a lease agreement to maintain, more than $1 million in insurance. They contended that in such cases, the formula – insurance promised minus the $1 million primary policy – would provide coverage. They also argued that the formula was not inconsistent with the statement that an additional insured's coverage under the excess policies "will not be broader" than coverage under the underlying policy.

Old Republic and Ryder emphasized that other policy provisions make clear that Excess Policies 1 and 2 do not afford coverage for the underlying action. They argued that the Driverless Autos endorsement unambiguously makes the excess policies subject to the terms of the Lease Agreement, "including the limit or limits of liability. . . ." Plaintiffs' Brief in Support of Motion for Judgment on the Pleadings at 13 (quoting Complaint. Exs. D-F, Driverless Autos Endorsement). Hughes and Toomey opposed the Appellants' motion.

The trial court concluded Excess Policies 1 and 2 were ambiguous, specifically Section I.1.d. It construed the policies against Old Republic and found that they provided coverage for the underlying action. The trial court thus granted Hughes' motion with respect to the primary policy and Excess Policies 1 and 2 but denied it as to Excess Policy 3. As for Appellants' cross-motion, the court granted it as to Excess Policy 3 but denied it with respect to Excess Policies 1 and 2.

Old Republic and Ryder timely appealed and raise the following issues:

> 1. Did the Trial Court err in failing to consider the lease agreement between Ryder and Pocono . . . , which made clear that Pocono's automobile liability coverage was limited to the [Old Republic] $1 million primary policy?
>
> 2. Did the Trial Court err by interpreting the first and second layer excess insurance policies in a manner that was inconsistent with the reasonable expectations of the contracting parties, as was manifested in the language of the lease agreement and the [Old Republic] excess policies?
>
> 3. Did the Trial Court err in finding that the "additional insured" language contained in the [Old Republic] first and second layer excess insurance policies was ambiguous because it was different from the "additional insured" language contained in the [Old Republic] third layer excess insurance policy?
>
> 4. Did the Trial Court err in finding that the "additional insured" language contained in the [Old Republic] first and second layer excess insurance policies was ambiguous and/or in conflict, and therefore resulted in Pocono being an additional insured under both policies?
>
> 5. Did the Trial Court err in failing to read the [Old Republic] first and second layer excess insurance policies as a whole, resulting in the Trial Court failing to consider additional language contained in those policies that would have demonstrated there were no ambiguities in the meaning of

the "additional insured" policy language and Pocono did not qualify as an additional insured under either policy?

Appellants' Br. at 4.

In all five issues, Appellants argue that the trial court erroneously interpreted the policies and Lease Agreement and claim Excess Policies 1 and 2 do not provide coverage for the underlying action.[6] We will address the issues together.

The parties essentially renew the arguments they made below. Appellants maintain the trial court ignored the Lease Agreement, misread the policy language, and misapplied the law. They argue the court failed to address or consider the Lease Agreement, even though the excess policies incorporate the terms of the Lease Agreement. Further, they contend the court failed to consider that Ryder contracted in the Lease Agreement for $1 million in insurance coverage, which it obtained. They note that Hughes and Toomey were not parties to the insurance contracts.

Appellants also argue the court erred in finding Excess Policies 1 and 2 were ambiguous or in conflict because Excess Policy 3 contained different language. Further, Appellants claim the trial court erred in finding Section I.1.d. of Excess Policies 1 and 2 contradictory. They argue that if the Lease Agreement had provided for more than $1 million in insurance, the policies would have afforded the additional coverage. They further maintain that the statement that any coverage afforded is no "broader" than the underlying

---

[6] Appellants agree that the primary policy provides coverage. Hughes and Toomey do not contend on appeal that Excess Policy 3 provides coverage.

- 9 -

policy does not apply to policy limits. They contend the phrase addresses the terms of the coverage, such as the types of claims covered. Appellants also claim the section uses standard language and cites cases from other jurisdictions in support of its interpretation. Appellants add that the court should have considered other terms of the excess policies, such as the Driverless Auto Endorsements.

Hughes and Toomey make similar arguments in response. Toomey responds that Excess Policies 1 and 2 are ambiguous because they include Pocono as an "insured" but also carve out an undefined category of "additional insureds" for whom the policies provide illusory coverage. She argues that the primary policy includes Pocono under the definition of "insured" and the "Driverless Auto Endorsement" amends the excess policies to modify the "Who is an Insured" section to include organizations for whom the Named Insured is obligated to provide insurance. Toomey's Br. at 23. She therefore contends that, contrary to Appellants' claim, Section I.1.d. does not apply, as that applies to "additional insureds." *Id.* at 24. She notes no policy defined the term "additional insured." She claims this creates an ambiguity and should be interpreted against Old Republic.

Toomey further claims that, even if Pocono were an "additional insured" such that Section I.1.d. applied, the court correctly found it ambiguous. She maintains the Driverless Auto Endorsement is of no moment because it does not explicitly preclude excess coverage. Toomey adds that Old Republic could have expressly excluded lessees such as Pocono from excess coverage, as it

did in Excess Policy 3, but failed to do so. She further claims there is no support in the record for Appellants' claim that the policies were intended to provide a tiered structure. She also argues that Pocono reasonably expected coverage under the excess policies.[7] She maintains that the clear and unambiguous terms of the Lease Agreement do not limit or preclude excess coverage.

Hughes likewise argues Excess Policies 1 and 2 are ambiguous because they include Pocono and Parks as "insureds," and if they are insureds under the primary policy, they are insureds under the excess policies. She contends that if Old Republic and Ryder intended to exclude Pocono from the definition of Insured, they could have done so, as they did in Excess Policy 3. She agrees with the trial court that Section I.1.d. is contradictory and argues that Appellants' argument considered the Lease Agreement in a vacuum and ignores the language of the excess policies.

She also maintains the Lease Agreement's insurance provision does not exclude excess liability coverage, and if Ryder had intended to provide Pocono with only $1 million in coverage it would have excluded excess coverage in the lease. She points out that the Lease Agreement references excess

_____

[7] Toomey maintains the trial court did not need to engage in a reasonable expectation analysis, because such an analysis applies only where the policy is unambiguous and the insurer unilaterally reduced or excluded coverage. In its reply brief, Appellants argue they not invoking the "reasonable expectations doctrine," which they maintain applies where a court is asked to override a policy's terms. Appellants' Br. at 26. Rather, they are asking the Court to "ascertain the reasonable expectations of the insured . . . as manifested by the language of the policy." *Id.* (emphasis omitted).

coverage and contains exclusions of various types of coverage but does not exclude excess coverage. Hughes further argues that the parties' differing interpretations of Section I.1.d. shows it is contradictory and ambiguous. As for the Driverless Auto Endorsement, Hughes notes that it states that the insurance applies to organizations leasing or renting a covered auto and the lease agreement does not exclude coverage. Hughes further states that in its answer to the declaratory judgment complaint, Ryder agreed that the provisions were ambiguous and that it reasonably expected coverage.

"The interpretation of an insurance contract is a question of law, [and] our standard of review is *de novo*." **Donegal Mut. Ins. Co. v. Baumhammers**, 938 A.2d 286, 290 (Pa. 2007) (citation omitted). "Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms of the written insurance policy." **Id.** "When the language of the policy is clear and unambiguous, we must give effect to that language." **Id.** (quoting **Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.**, 908 A.2d 888, 897 (Pa. 2006)). However, if a policy is ambiguous, we construe it in favor of the insured and against the insurer, as the drafter of the policy. **Id.**

"It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together." **Southwestern Energy Production. Co. v. Forest Resources. LLC**, 83 A.3d 177, 187 (Pa.Super. 2013) (quoting **Trombetta v. Raymond James Financial Services, Inc.**, 907 A.2d 550, 560 (Pa.Super. 2006)). We

similarly do not examine provisions in a single contract in isolation, but rather consider them together. They are not "independent agreements thrown together without consideration of their combined effects." **Id.** (quoting **Trombetta**, 907 A.2d at 560).

Excess Policies 1 and 2 are not ambiguous in any material respect. The formula in Section I.1.d. does not conflict with any policy provision and does not result in "illusory" coverage. The fact that, in this instance, it does not provide excess coverage for Pocono and Parks does not make coverage illusory or the contract ambiguous. The policies are for all of Ryder's lessees, with the formula providing a means for determining the amount of excess coverage where a lessee contracted in the Lease Agreement for more than $1 million in coverage. Pocono did not do so. If it had, the formula would make available excess coverage, to the extent Pocono had contracted for more than $1 million.

Nor is there any conflict between the formula and the statement that an additional insured's excess coverage is not "broader" than that of the underlying insurance. Even assuming (without deciding) that the statement restricting the breadth of coverage applies to policy limits, the two statements are utterly compatible, even as applied here. Here, the resultant coverage under the formula - $0 – is not "broader" than the coverage in the underlying policy - $1 million.

We note that other sections of the excess policies also incorporate the lease agreement, which limits the insurance liability amounts to $1 million.

Reading the contracts together, *see Southwestern Energy Prods.*, 83 A.3d at 187, Pocono contracted with Ryder for $1 million in liability insurance, which is provided by the primary policy. If Pocono had contracted for a higher liability coverage amount, the excess policies would provide the additional coverage. However, Pocono did not contract for a higher amount, and therefore the excess policies do not apply. That Excess Policies 1 and 2 do not contain the language excluding coverage that is contained in Excess Policy 3 is inapposite. Unlike Policy 3, which would be available only to Ryder, Excess Policies 1 and 2 were available to Ryder's customers, if they chose to contract for higher insurance coverage amounts.

This case is distinguishable from *Ramara, Inc. v. Westfield Ins. Co.*, 69 F. Supp. 3d 490 (E.D. Pa. 2014), relied on by the trial court, Hughes, and Toomey. There, one policy endorsement included a person as an additional insured only if the injury at issue was caused by an insured's acts or omissions, and the other allowed excess coverage where the damage was caused by the sole negligence of an additional insured. *Id.* at 494. The court found that the first endorsement conflicted with the second. *Id.* at 497. The court stated that the excess coverage could be "impossible to trigger," asking, "How could a loss caused by [an additional insured's] *sole* negligence also be proximately caused by [a named insured's] acts or omissions?" *Id.* The court further found that if they were not in conflict, they were "[a]t a minimum" ambiguous. *Id.*

Here, unlike the provisions at issue in *Ramara*, the policy provisions do not conflict, and it is not impossible to trigger coverage. As explained above,

- 14 -

the statement that excess coverage is no "broader" than that afforded by the underlying policy is utterly compatible with the coverage formula. Nor is it impossible to trigger excess coverage. Rather, coverage would be triggered where a customer contracted in the Lease Agreement for greater than $1 million in coverage.

We disagree with Toomey and Hughes' attempt to claim Section I.1.d. addressing "additional insured" does not apply to them because they are "insureds" under the policies and the policies do not include a definition of "additional insured." "Additional insured" has a settled meaning, which we must apply unless the contract or the context dictate otherwise. An "additional insured" is "a person other than the one in whose name a policy is issued but who is also protected by that policy." Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/additional%20insured (last accessed Sept. 21, 2021). Here, Pocono was an "additional insured," as it was a person other than the named insured, Ryder, who could have been afforded protection by the policy. We are also unpersuaded by Toomey and Hughes' argument that the Lease Agreement provided for $1 million in insurance but did not preclude Ryder from procuring additional insurance for Pocono. Be that as it may, nothing here shows Ryder bought additional insurance for Pocono's benefit. The argument is contrary to the plain language of the Lease Agreement and the policies. Excess Policies 1 and 2 do not provide coverage for the underlying action.

Order reversed in part. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/10/2021*